## Case No. 484.

### The ANTELOPE.

### MONTGOMERY v. TYSON.

[1 Lowell, 130.][1]

District Court, D. Massachusetts. Feb., 1867.

SEAMEN—WAGES—WRITTEN CONTRACT—WHALING VOYAGE—SALVAGE—SEAMEN AS SALVORS.

1. Seamen in the whaling service have a lien on the oil for their wages.

[Cited in The Ontario, Case No. 10,543.]

[1][Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

2. Seamen can be salvors only when their connection with the ship has been entirely broken up.

[See The Olive Branch, Case No. 10,490; Phillips v. McCall, Id. 11,104.]

3. Daily wages which had been promised the crew for services in the nature of salvage were allowed, the owners not objecting.

4. Where, in the original articles for a whaling voyage, the time of its continuance, though agreed on, was accidentally omitted to be written out, the defect can be supplied by oral evidence.

[Cited in Frates v. Howland, Case No. 5,066.]

5. Salvage paid by the master in good faith, and in the exercise of reasonable prudence, is a charge upon the oil in which the crew must share.

In admiralty.

F. W. Sawyer and E. H. Pierce, for libellants.

T. K. Lothrop and W. W. Crapo, for claimants.

LOWELL, District Judge. These two cases, which were tried together, were both promoted by the crew of the whaling bark Antelope; one for wages and salvage, brought against the oil which was saved and sent home from the wreck of the vessel, and the other against the master and owners for damages for alleged short supplies and other breaches of the contract or the duty of the respondents. The vessel, which was lost on the rocks of Nianteleck harbor, in Cumberland inlet, on the night of the fifth of October last, had had a long and unsuccessful voyage, and had passed two winters in the ice. The amount of oil and bone taken was not sufficient to give either to owners or crew any thing like a fair return upon their respective outlays of time, labor, and money. These circumstances are not the most propitious for the harmonious settlement of any joint enterprise.

Taking first the libel that was first filed. It is clear that the libellants are entitled to the lays provided for in the articles. They contend for more, and say that the articles are void as not complying with the statutes, in this, that the voyage is not stated in them. It appears, that in the original paper the time to which the voyage was limited is not mentioned; but it is proved that the usage on this Greenland fishery, is, to stipulate for a term not exceeding thirty months; and that it was so understood in this case; and that the copy of the articles certified by the collector, which was taken in the ship, was so written out. How this discrepancy occurred is not shown, and there is no reason to suspect any fraud on the part of any one. Under these circumstances the omission may be made good by oral evidence. Wickham v. Blight, [Case No. 17,611;] The Harvey, 2 Hagg. Adm. 79. So far as statutes are concerned, there is none, I think, which regulates the shipping of men on whaling voyages, or requires the contract to be in writing; I mean the original shipment in the home port. Curt. Merch. Seam. 60; Taber v. U. S., [Case No. 13,722;] The Atlantic, [Id. 620.] So that no question arises under the law making void shipments of seamen contrary to law.

Salvage the crew cannot have in whaling voyages more than in others, except in the few excepted cases, of which this is not one. The Holder Borden, [Id. 6,600.] In one case like this, Judge Betts allowed the men a per diem compensation for work and labor. Reed v. Hussey, [Id. 11,646.] In the present case it is admitted that they are entitled to such a compensation, under a promise of the master, the binding force of which is not disputed by the owners, though perhaps they might have set up that it was without consideration. When the wreck occurred, the crew, knowing that their interest in the catchings amounted to little or nothing beyond the advances and slops they had received, showed a disposition to refuse duty, and six of them actually deserted for a time; and the master promised the men they should have days' wages if they would work faithfully in saving the property. They did work for some eleven days, and I shall allow them for that time the highest rate mentioned by the master. They will receive fifty-five dollars each, excepting the six men above mentioned; and they, forty-five dollars each.

Some doubt was expressed at the argument whether the seamen can proceed against the oil in the hands of the owners. It has long since been settled that the property in the oil is wholly in the owners of the vessel; and that the lays of the crew are only a mode of arriving at their wages. Many important consequences have followed from this doctrine; one of which is, that the sailors, not being partners nor part-owners, may sue at law for their wages, and are not obliged to go into equity for a settlement of accounts. The crew always have a lien on the freight for their wages; and one usual mode of enforcing liens on freight, in the English practice, is by a warrant against the cargo, to detain it until the freight is paid into the registry. The Ringdove, Swab. 312. Where the owners of the vessel own the cargo, they would be liable for a reasonable freight in all controversies and adjustments in which that question became important; and no doubt the right might be enforced in any proper case against the cargo itself. In whaling voyages, it may almost be said that the cargo, to the extent of the owners' shares, represents freight exclusively, having been earned in a long cruise by the use of the vessel and her outfits. The doubt arises out of the terms of the articles, by which the owners have the right to sell the oil and bone. This agreement must undoubtedly confer upon them the right to give a good title, clear of all liens; and they might probably sell the oil and bone before its arrival home. But, until a sale is made, I am of opinion that the seamen have a lien upon the oil.

Judge Sprague appears to have understood the matter in this way in his remarks in Hussey v. Fields, [Case No. 6,947;] and such a libel was brought in Two Hundred and Ninety Barrels of Oil, [Id. 14,294.] If the question were between shipper and ship-owner, the master's lien for freight would be lost by any agreement in the charter-party or bill of lading inconsistent with his retaining the cargo for the freight. But the master's lien for freight has been decided by the supreme court of the United States to depend entirely on possession; that of the seaman for wages has no relation whatever to possession, which he never has, either of ship or freight.

On the part of the crew, it is urged that the large payment which was made to the steamer Wolf, for assistance in saving the oil and transporting it and the crew to St. Johns, Newfoundland, ought not to be allowed as a charge against the gross proceeds, or what otherwise might have been the proceeds of the voyage. There can be no doubt that the services of the Wolf were salvage services, whether her crew took more or less part in getting the oil from the wreck, because it appears that there were no conveniences for storing or caring for the oil on the bleak shores of the country where the Antelope was lost; and no regular or reasonably certain means of getting it home; and in a few days or weeks all intercourse with the wreck would be shut out for months by the ice; and under these circumstances something more than mere freight would be allowed for the work actually performed by the steamer. The contract was made by the master of the Antelope, in good faith and for the best terms he could obtain, and he has actually paid the price. If there were any appearance of fraud, or of any underhand advantage accruing either to the master or owners, I should not hesitate to disregard the contract; for I shall adhere, until otherwise instructed by a superior court, to the doctrine laid down by Judge Sprague, in Jay v. Allen, [Case No. 7,235,] that the master is the agent of the owners, and that for his embezzlement or misfeasance in respect to the oil, they must be responsible to the crew. I am aware that some doubt was expressed upon this point by Mr. Justice Woodbury, in the same case, reported as Joy v. Allen, [Id. 7,552;] but it seems, on a careful examination of the judgment, that the decision did not turn upon this point; and there is reason to believe that Judge Sprague did not consider the point as definitely settled against his opinion.

The same doctrine is invoked by the crew in another way. They endeavor to show that the vessel was purposely cast away by the master; and aver that if this be proved the owners must bear all the expenses consequent upon his act. In the first libel the allegation is in the modified form, that the libellants aver and believe that the disaster was unnecessary and might have been avoided. The evidence fails to sustain this grave charge. It is shown that the vessel was but partially insured, and the cargo not at all; and that every possible present or prospective interest of the master as well as the owners was against the loss of the vessel, and no just cause of suspicion either of wilful or grossly negligent conduct is shown. On the contrary, the testimony confirms the statement of the libel, that there was a great and sudden increase of wind about two o'clock at night. There is some evidence on both sides that the watch were either inattentive or incapable; but there is none that the master is responsible for this. The attempt of the libellants to charge the master with so grave a crime upon the flimsy grounds brought forward in its support, tends to throw great doubt upon their own fairness as witnesses, and leads me to scrutinize their evidence with much care in other matters.

That the crew contribute to salvage in whaling and fishing voyages might be established by reasoning, were it not already decided. The contract of the owners to receive and transport the oil contains an implied exception of perils of the seas; and it is only on what escapes such perils that the lays can be reckoned, and they therefore contribute. Reed v. Hussey, [Case No. 11,-646;] Utpadel v. Fears, [Id. 16,808;] The Holder Borden, [Id. 6,600.] The libellants will recover, in this case, their extra wages, and their lays, if any.

The judge then considered the second case, which turned only on points of evidence, and decided it for the claimants; giving costs to neither party. Decrees accordingly.